UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

GAVIN COOK, individually, and as sole )
surviving heir of TIMOTHY COOK, )
deceased, )
                        )
        Plaintiff, )
                        )
v. )    No.:   3:25-CV-74-TAV-DCP
                        )
MCMINN COUNTY, TENNESSEE, )
                        )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant's motion to dismiss [Doc. 15]. Defendant moves the Court to partially dismiss plaintiff's complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 21 [*Id.*]. Plaintiff has responded [Doc. 21], and defendant has replied [Doc. 22]. Accordingly, this matter is ripe for review. E.D. Tenn. L.R. 7.1(a). For the reasons explained below, defendant's motion [Doc. 15] will be **DENIED**.

## I.     Background

### A.     Original Action — Case No. 1:19-CV-42-TAV-SKL[1]

On February 14, 2019, Jamie Rager, as mother, guardian, and next friend of Gavin Cook,[2] filed suit against: (1) McMinn County, Tennessee ("McMinn County"); (2) Joe Guy, the McMinn County Sheriff; and (3) Derrick Saxe, a McMinn County officer [Doc.

---

[1] All document numbers within this section, Section I.A., pertain to Case No. 1:19-CV-42. All other citations refer to the instant case, Case No. 3:25-CV-74, unless otherwise noted.

[2] For clarity, this memorandum opinion and order will refer to Gavin Cook as "plaintiff" and Timothy Cook as "Cook."

1].[3]  Rager brought her action pursuant to 42 U.S.C. § 1983 and Tennessee law "based upon the failure of the Defendants [to] protect a detainee—Timothy Cook—from a fellow detainee—Jarred Jones—who was well known to the Defendants for his propensity to commit acts of violence against fellow detainees in the McMinn County Detention Center that resulted in Jones' murder of Cook" [Doc. 6 ¶ 1 (internal abbreviations omitted)].  The defendants filed their collective answer on May 6, 2019 [Doc. 14].

On January 15, 2021, the defendants filed a motion for summary judgment [Doc. 28].  On October 8, 2021, the Court denied summary judgment as to the plaintiff's § 1983 claims for failure to protect and failure to train and supervise and granted summary judgment as to the plaintiff's § 1983 claims for failure to fund the jail and the plaintiff's state law claims [Docs. 37, 38].  The defendants appealed [Doc. 39].  Specifically, Sheriff Guy and Officer Saxe appealed the denial of qualified immunity, and defendant McMinn County appealed the denial of summary judgment on the plaintiff's *Monell* claims [*See* Doc. 47, p. 2].

On August 2, 2023, the Sixth Circuit issued its opinion as to the defendants' appeal [*Id.*].  The Sixth Circuit reversed in part, determining Officer Saxe was entitled to qualified immunity and construing the plaintiff's claims against Sheriff Guy as claims of municipal liability [*Id.* at 5–6].  As to defendant McMinn County, the Sixth Circuit dismissed its appeal, determining it lacked jurisdiction over it [*Id.* at 7].  After the Sixth Circuit issued its mandate [Doc. 48], this Court entered an order in accordance with the Sixth Circuit's

---

[3]  A few days later, Rager filed an amended complaint to fix the case caption [Doc. 6].

2

ruling, dismissing all claims against Officer Saxe and Sheriff Guy and providing that the plaintiff's *Monell* claims against McMinn County for failure to train and failure to protect would proceed [Doc. 49].

As the case approached its trial date in August of 2024, a series of events occurred. Rager's lead counsel withdrew [Doc. 72], and new counsel appeared on behalf of Rager [Doc. 77; *see* Doc. 79]. Rager subsequently filed a series of motions: (1) a motion to continue [Doc. 81]; (2) a motion to substitute Gavin Cook as plaintiff [Doc. 83]; and (3) a motion to dismiss without prejudice pursuant to Rule 41(a)(2) [Doc. 85]. On the day of the final pretrial conference, August 20, 2024, the Court held a hearing on these motions [Doc. 93]. Based on the parties' arguments and discussions at this hearing, the Court denied the motion to continue, granted the motion to substitute party, and granted the motion for voluntary dismissal [Doc. 94]. According to the parties' agreement, the case was dismissed with the following conditions:

> 1. Should plaintiff decide to refile this case, the only claim that plaintiff may bring is the single claim that currently remains in this lawsuit: plaintiff's *Monell* claim against defendant McMinn County. Plaintiff may not bring additional claims against defendant McMinn County or any new claims against previously dismissed defendants or new defendants; and

> 2. If plaintiff decides to refile this case, the new case shall be deemed a related case under this Court's local rules, *see* E.D. Tenn. L.R. 3.2, and assigned to the same district judge.

[*Id.* at 2].

### B.    Present Action — Case No. 3:25-CV-74-TAV-DCP

On February 21, 2025, plaintiff filed this instant action against McMinn County pursuant to 42 U.S.C. § 1983 [Doc. 1].  Plaintiff provides that his action arises from "the failure of Defendant McMinn County . . . to protect pretrial detainee Timothy Cook from a known violent detainee, Jarrod Jones ("Jones"), failure to train, and failure to supervise its agents, employees, and correctional officers [Doc. 12 ¶ 1 (emphasis omitted) (stating "[t]his is a single *Monell* claim with three subparts")].

As to the facts of the case, plaintiff alleges that on February 17, 2018, Cook was arrested by the Athens Police Department for driving under the influence and taken to jail where he was booked [*Id.* ¶¶ 27–28].  Cook was placed in "Cell One" alongside Jones [*Id.* ¶ 28].  Plaintiff claims that the McMinn County Sheriff's Office had knowledge of Jones' extensive history of violent assaults on fellow inmates [*Id.* ¶¶ 30, 36–39; *see* Doc. 12-1; Doc. 12-2].  Despite this, plaintiff asserts, the jail maintained a "clean slate" and/or "fresh start" policy, "wherein detainees with known violent histories were not segregated from others unless they displayed current aggressive behavior upon booking" [Doc. 12 ¶ 31].

At approximately 6:22 p.m., Jones, without provocation, attacked Cook [*Id.* ¶ 32].  Plaintiff alleges that correctional officers did not intervene, despite the attack occurring in their direct view [*Id.* ¶ 33].  When officers arrived, Cook was not breathing and was non-responsive [*Id.*].  Jones was restrained [*Id.*].  Cook was transported to the hospital where he succumbed to his injuries after nearly a week on life support [*Id.* ¶ 34].

4

On August 6, 2025, defendant filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 21, requesting that the Court enter an Order dismissing plaintiff's "new additional *Monell* claim for failure to supervise since it was not pending when the prior lawsuit was dismissed" [Doc. 15, p. 3].

## II.     Standard of Review

### A.     Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

5

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

Further, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Put differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of U.S.*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). "The movant's burden . . . is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024).

6

## B. Rule 21

Rule 21 provides in relevant part that a court may "sever any claim against a party." Despite use of the word "sever," "Rule 21 gives the [c]ourt discretion to both sever and dismiss claims 'on just terms.'" *Baker v. Midwest First Star, Inc.*, No. 1:23-CV-2208, 2024 WL 2188198, at *1 (N.D. Ohio May 15, 2024) (quoting *Dix v. Atos IT Sols. & Servs., Inc.*, No. 1:18-cv-275, 2021 WL 1165762, at *9 (S.D. Ohio Mar. 25, 2021)).

## III. Analysis

### A. Parties' Arguments

As noted above, defendant asserts that, in defiance of the Court's Order in Case No. 1:19-CV-42 ("*Rager*"), plaintiff's amended complaint [Doc. 12] "includes references to a new and completely different *Monell* claim against [d]efendant for failure to supervise" [Doc. 16, p. 2]. The Court's prior Order in *Rager*, defendant contends, was clear that if plaintiff chose to refile his lawsuit, he would "be limited to the *Monell* claims against the [d]efendant that existed at the time of dismissal—*Monell* claims against [d]efendant for failure to train and failure to protect" [*Id.* at 5 (citations omitted)]. Plaintiff was not to bring "additional claims against McMinn County" [*Id.* (citation omitted)].

Defendant submits that a review of the amended complaint and second amended complaint in *Rager* clearly demonstrates the absence of a *Monell* claim for failure to supervise in the original action [*Id.* (citations omitted)]. Moreover, the Court confirmed following the Sixth Circuit's ruling that the only claims remaining were "plaintiff's *Monell* claims against McMinn County for *failure to train* and *failure to protect*" [*Id.* (emphasis in

7

original) (citing *Rager*, Doc. 49)]. Defendant also notes that the proposed special jury instructions it filed in the original action did not include a single instruction related to a *Monell* claim for failure to supervise [*Id.* (citing *Rager*, Doc. 68)]. Furthermore, in the draft Agreed Pretrial Order exchanged between the parties in the original action, there is no reference to such a *Monell* claim [*Id.* at 5–6; *see* Doc. 16-1; Doc. 16-2].

Alternatively, defendant argues, "any new alleged *Monell* claim for failure to supervise in this lawsuit would be time barred now" [Doc. 16, p. 6]. Specifically, defendant asserts that plaintiff would have needed to put it on notice of the *Monell* claim for failure to supervise by at least February 17, 2019, given Tennessee's one-year statute of limitations for personal injury actions in proceedings arising under § 1983 [*Id.* at 6–7 (citations omitted)]. And the amended complaint in this present case [Doc. 12] was filed more than six years too late. [Doc. 16, p. 7].

In response, plaintiff avers that defendant is improperly conflating the number of causes of actions, or theories, with the number of legal claims [Doc. 21, p. 1]. Specifically, plaintiff submits that he is alleging one *Monell* claim here arising from the same set of operative facts, and that this claim "includes three distinct theories of liability—failure to train, failure to protect, and failure to supervise" [*Id.* at 1–2]. And while defendant argues that the second amended complaint was devoid of any "failure to supervise" pleadings, plaintiff asserts otherwise, pointing to several paragraphs within that complaint [*Id.* at 2 (citing *Rager*, Doc. 60 ¶¶ 57–58, 62)]. While plaintiff admits that the word "supervise" was not included in the second amended complaint, he emphasizes that "[f]ederal pleading

8

standards require notice and sufficient factual allegations, not labels" [*Id.* (citation omitted)]. In other words, plaintiff maintains that defendant was on notice of a "supervision-based theory—particularly where the pleadings stated that the McMinn County Jail failed to monitor violent detainees and evaluate performances of guards with inmate safety" [*Id.* at 3].

Moreover, plaintiff contends, the pleadings from the original action do not control here, except as stated in the Court's final Order granting voluntary dismissal, because this instant action is a distinct legal proceeding [*Id.*]. And the Court's Order of dismissal did not restrict plaintiff to "two theories, nor did it prohibit the clarification or expansion of previously asserted facts and causes of actions" [*Id.* (citation omitted)].

In reply, defendant argues that failure to train and failure to supervise are distinct theories of municipal liability under *Monell*, focusing on different aspects of municipal conduct and requiring distinct evidentiary showings [Doc. 22, p. 2]. While defendant does provide that the legal standards for both theories overlap, defendant maintains that "the evidence required to prove each claim differs" [*Id.* at 3].

### B. *Monell* Claim — Failure to Supervise

The Court begins with a brief overview of § 1983 and *Monell* liability. To state a claim under § 1983, a plaintiff must allege: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted). As decided by the Supreme Court in *Monell*, a local

9

governmental entity is a "person" within the meaning of § 1983 and, therefore, such entities may be subject to liability for § 1983 claims. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). "Under § 1983, municipal liability attaches only if a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 685 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)). There are four generally recognized avenues, or theories, under which a plaintiff can establish a municipality's policy or custom, and in turn, municipal liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023) (internal quotation marks omitted) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

With this in mind, the Court turns to the complaint in *Rager*. Notably, the complaint was amended twice, but neither time did the substantive matter change [*See Rager*, Doc. 6 (first amended complaint to place individual defendants in heading/style of complaint); *Rager*, Doc. 57, p. 2 (second amended complaint to include the specific amount of damages claimed and an "itemized list of medical costs pursuant to Tenn. Code Ann. § 24-5-113"); *Rager*, Doc. 60]. Upon review of these complaints, all nearly identical, the Court finds that

10

the plaintiff's *Monell* claim for failure to supervise existed therein.

Specifically, in paragraph 62 of every version of the plaintiff's complaint, the following was alleged:

> The Defendants failed to adequately monitor and evaluate the performance of their employees, agents, contractors and staff with respect to their duties and obligations to protect detainees from known dangers, including those dangers posed by detainees well known for attacking their fellow detainees, and this failure was due to delegate indifference and reckless disregard to the welfare and safety or detainees such as Cook.

[*Rager*, Doc. 6 ¶ 62; *Rager*, Doc. 60 ¶ 62]. In *Amerson v. Waterford Tp.*, 562 F. App'x 484, 492 (6th Cir. 2014), cited to by defendant in its instant motion, the Sixth Circuit acknowledged the existence of failure-to-supervise claims, stating that a plaintiff "may successfully bring claims against municipalities for failure to supervise where they do not *conduct reviews or monitor the performance of their employees*."[4] 562 F. App'x 492 (emphasis added). This language largely mirrors the language used by the plaintiff in *Rager* [*Rager*, Doc. 60 ¶ 62].

Though defendant here is correct that the plaintiff in *Rager* did not use the word "supervise" in her complaint, labels are not the end all be all of a complaint. Rather, when evaluating a plaintiff's claims, the Court is to construe the pleadings "so as to do justice." *Stoudemire v. Michigan. Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(e)). As the Sixth Circuit has stated,

---

[4] The Court notes that for such a claim, a plaintiff must also "show that the municipality lacks such a process out of deliberate indifference for the constitutional violations that may occur as a result." *Amerson*, 562 F. App'x at 492 (reviewing an order granting summary judgment).

11

the "fundamental tenor of the Rules is one of liberality rather than technicality." *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000). Thus, the Court does "not rely solely on labels in [the plaintiff's] complaint, but . . . . probe[s] deeper and examine[s] the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). Considering this, and upon review of the plaintiff's complaint in *Rager*, the Court finds it provided fair notice to defendant of a failure-to-supervise *Monell* claim.

The Court also notes that defendant's argument that it was not "on notice" of the plaintiff's failure-to-supervise *Monell* claim is belied by its own summary judgment motion in *Rager* [*See Rager*, Doc. 29, p. 10 ("The Plaintiff further alleges that the Decedent's constitutional rights were violated by Defendants['] failure to train and *supervise* . . . .") (emphasis added) (citing *Rager*, Doc. 1 ¶ 61–63); *see id.* at p. 11 ("Plaintiff further attempts to allege that the Defendants failed to train and *supervise* the corrections officers at the Detention Center.") (emphasis added) (citing *Rager*, Doc. 1 ¶¶ 61–62)]. The Court, in ruling on the defendants' motion, also recognized plaintiff's failure to supervise claim [*Rager*, Doc. 37, p. 14].

The Court acknowledges that these references to failure to supervise come in combination with plaintiff's failure-to-train *Monell* claim. Based on case law, however, it is not atypical for these claims to be intertwined. *See Helphenstine*, 60 F.4th at 323. As noted above, the Sixth Circuit in *Helphenstine* provided that:

> A municipality may be held liable under one of four recognized theories: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate *training or supervision*;

12

or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

60 F.4th at 323 (emphasis added) (quoting *Burgess*, 735 F.3d at 478); *accord Marcilis v. Township of Redford*, 693 F.3d 589, 605 (6th Cir. 2012) (articulating what a plaintiff must prove to prevail on a "failure to train or supervise claim"); *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–89 (6th Cir. 2020) (analyzing a "failure to train or supervise claim" and discussing "training" and "supervision" in tandem). Considering this, the Court does not find its later reference to simply a "failure to train" claim as precluding the existence of a conjunctive "or supervise" claim in *Rager* [*See Rager*, Doc. 49]. It is reasonable to presume the Court, viewing such claims as intertwined in its summary judgment ruling [*see Rager*, Doc. 37, p. 14], to have viewed them the same in its Order following the Sixth Circuit's ruling [*Rager*, Doc. 49].

Defendant also points to its own submission of jury instructions in *Rager* [*see Rager*, Doc. 68] and the draft Agreed Pretrial Orders exchanged and revised between the parties [Doc. 16-1; Doc. 16-2] in support of its assertion that a *Monell* claim for failure to supervise never existed. The Court finds these grounds unpersuasive. As to the former, defendant asks the Court to consider its own filing to determine the claims of the plaintiff. The Court finds this inappropriate and notes that at no time did the Court find the plaintiff to have abandoned the claim of failure to supervise, combined with the failure-to-train claim or not. As to the latter, despite an Agreed Pretrial Order being emailed to the Court

13

[*see* Doc. 16-1],[5] an Agreed Pretrial Order was never actually entered in *Rager*, and the Court sees no reason why it should consider that which was never a part of the original action's record now.

Considering all the above, the Court does not find that plaintiff's *Monell* claim for failure to supervise in the instant case to be in violation of this Court's final Order in *Rager* [*Rager*, Doc. 94]. Such claim is not an "additional claim[] against defendant McMinn County" [*Id.* at 2]. Instead, the claim, or theory, of failure to supervise lies within the "single claim" that remained in *Rager*: "plaintiff's *Monell* claim against defendant McMinn County" [*Id.*]. While plaintiff now brings the failure-to-supervise claim separately from its failure-to-train claim, the Sixth Circuit, as noted by defendant, has recognized "failure to supervise" as its own individual *Monell* claim or theory. *See Amerson*, 562 F. App'x at 492; *Pesci v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017). Moreover, courts have considered *Monell* claims in which a plaintiff splits his theories amongst counts, *see Milby v. Underwood*, 713 F. Supp. 3d 383, 389–90 (W.D. Ky. 2024), and *Monell* claims in which a plaintiff lumps his theories into one singular count, *see Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 878, 883–93 (N.D. Ohio 2025); *Burgess*, 735 F.3d at 478. Regardless of how it is brought, plaintiff's failure-to-supervise claim will remain in this case.

---

[5] The Court also notes that the Agreed Pretrial Order version sent to the Court was incomplete, lacking the defendant's input and revisions entirely.

## IV. Conclusion

Accordingly, for the reasons explained above, defendant's motion to dismiss [Doc. 15] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

15