**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **GAVIN COOK**,<br>Individually, and as sole surviving heir<br>TIMOTHY COOK, deceased,<br><br>Plaintiff,<br><br>v.<br><br>**MCMINN COUNTY, TENNESSEE**,<br><br>Defendant. | ) | No. 3:25-CV-00074<br>JURY DEMAND |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant McMinn County, Tennessee ("McMinn County" or the "County"), by and through undersigned counsel, hereby submits the following memorandum in support of Defendant's Motion for Summary Judgment [Doc. 39].

## INTRODUCTION

Plaintiff Gavin Cook ("Plaintiff"), Individually, and as sole surviving heir of Timothy Cook, deceased seeks to impose municipal liability on Defendant McMinn County, Tennessee under 42 U.S.C. § 1983 for the tragic assault of Timothy Cook ("Cook") by Jerrod Jones ("Jones") at the McMinn County Detention Facility ("MCDF") on February 17, 2018. The record establishes that Jones's assault was sudden; that the men were in a temporary booking-area holding cell while their booking processes remained incomplete; that Jones entered on nonviolent property and trespass charges; that his contemporaneous intake assessment did not identify behavior suggesting

a risk of assault; and that officers promptly restrained Jones, initiated CPR, summoned an ambulance and rendered emergency aid to Cook.

Respectfully, those facts do not establish a municipal policy or custom that was the moving force behind a constitutional violation. MCDF maintained written policies requiring housing screening, visual checks, monitoring, incident reporting, supervisory notification, and remedial action. The prior Jones incident reports document staff intervention – not tolerance or acquiescence. The Tennessee Corrections Institute ("TCI")[1] did not identify a classification deficiency; its initial 2018 supervision finding concerned routine security checks exceeding a one-hour parameter, not temporary booking placement in Holding Cell One, or staff response to an active assault.

Plaintiff's theories rest instead on retrospective inferences from disciplinary records, an alleged "clean slate"[2] label, and disputed expert opinions. That is insufficient. Municipal liability cannot rest on respondent superior or the mere fact that an assault occurred. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691-92 (1978). Plaintiff has not produced evidence from which a jury could find a clear and persistent pattern of materially similar constitutional violations, County notice and deliberate indifference, or a direct causal link between a County policy or custom and Mr. Cook's death. Summary judgment should therefore be granted.

---

[1] The TCI, under the authority of Tenn. Code Ann. § 41-4-140, is required to establish minimum standards for adult local jails, lock-ups, workhouses and detention facilities in Tennessee. Inspections and re-inspections are conducted within the mandated timeframe to ensure compliance of all standards for the purpose of certification. https://www.tn.gov/tci.html

[2] Sheriff Joe Guy testified that there is no written "clean slate" or "fresh policy" in the County's written policies while also confirming that his prior testimony about clean slate was not a written policy and played no role whatsoever in the subject incident between Mr. Cook and Mr. Jones on February 17, 2018. **Exhibit L** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Joe Guy pgs. 87-92, 107-08, and 128.

## PROCEDURAL POSTURE

This action is the second federal lawsuit arising from the February 17, 2018 incident. *Jaimie Rager v. McMinn County*, E.D. Tenn. No. 1:19-CV-42-TAV-SKL. In the original action, this Court granted Plaintiff's[3] request for a voluntary dismissal without prejudice on the condition that any refiled action be limited to a single *Monell* claim against McMinn County. *See* Order [Doc. 94 in E.D. Tenn. No. 1:19-CV-42-TAV-SKL]. This Court held that Plaintiff could not add claims against McMinn County or bring new claims against previously dismissed or new defendants. *Id.* The Court then dismissed the remaining *Monell* claim without prejudice and closed the original case. *Id.*

Plaintiff refiled this case against McMinn County on February 21, 2025. *See* Complaint [Doc. 1]. The current complaint characterizes the case as *one* municipal-liability claim advanced through *three-distinct theories* of failure-to-protect, failure-to-train, and failure-to-supervise theories. *See* Amended Complaint [Doc. 12] ¶¶ 1, 40-74; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss [Doc. 21], PageID #195-96.

This Court denied the County's Motion to Dismiss the failure to supervise theory, concluding that it fell within the single *Monell* claim preserved by the original dismissal order. Memorandum Opinion & Order [Doc. 25], PageID #248-49. The earlier voluntary dismissal did not adjudicate the merits. The present motion instead tests whether, after discovery, Plaintiff has evidence sufficient to carry the required burdens at summary judgment.

---

[3] It should be noted that the first lawsuit was brought by the Plaintiff's mother, Jaimie Rager, as the mother, guardian and next friend of minor Gavin Cook. *See* Complaint [Doc. 1 in 1:19-CV-42-TAV-SKL]. The Order [Doc. 94 in 1:19-CV-42-TAV-SKL] that this Court entered on August 22, 2024 also granted the Plaintiff's request to substitute Plaintiff Gavin Cook for Plaintiff's mother, Jaimie Rager, since Plaintiff was no longer a minor. *See* pg. 2 of Order [Doc. 94 in 1:19-CV-42-TAV-SKL], PageID #815.

## STATEMENT OF FACTS

### A. MCDF's Written Policies Required Safety Screening, Monitoring, Incident Reporting, and Remedial Action

MCDF's written booking-officer post orders identified facility safety and security and prevention of bodily injury as primary staff duties. *See* **Exhibit C** attached to Defendant's Motion for Summary Judgment [Doc. 39], MCSO Policy & Procedure Manual, § 3.01 at 1-4; **Exhibit N** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Boo Hampton pgs. 61-63. The orders required booking staff, among other responsibilities, to screen detainees for suitability for housing, assign housing location, maintain security and order in the booking area, conduct visual checks of detainees held in the holding area, monitor detainees, and assist with disturbances as directed by a supervisor. *Id.* The incident-reporting policy required MCDF staff who were involved in, witnessed, or learned of an incident to notify the shift supervisor immediately, take all possible action to remedy the situation, separate and isolate witnesses and victims, gather information, and complete reports by the end of the shift. *See* **Exhibit D** attached to Defendant's Motion for Summary Judgment [Doc. 39], MCSO Policy & Procedure Manual, § 4.02 at 3–5; **Exhibit K** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Tobias Parsons pgs. 9-10. The policy required immediate notification of the Jail Sergeant for inmate assaults and injuries or deaths.[4] *Id.*

### B. The TCI Materials Do Not Identify a Classification, Holding Cell, or Immediate-Response Deficiency Relevant to this Incident

TCI's April 2018 initial inspection of MCDF identified several items requiring correction before the facility could be re-certified in 2018. But it did not identify a deficiency in classification. **Exhibit A** attached to Defendant's Motion for Summary Judgment [Doc. 39], TCI

[4] Jail Administrator Tobias Parsons admitted that he was advised of Mr. Cook's assault and death following the incident. **Exhibit K** pgs. 50-51.

April 10, 2018 Inspection Report; **Exhibit L** pgs. 9-11, 119-21. The supervision item concerned periodic security checks exceeding a one-hour parameter. *Id.* It did not identify a deficiency related to Holding Cell One, booking-area visibility, staff response to an active assault, or intake classification. *Id.*

At the re-inspection on May 30, 2018, TCI reported that prior deficiencies of MCDF had been fully corrected and recommended certification.[5] **Exhibit B** attached to Defendant's Motion for Summary Judgment [Doc. 39], TCI May 30, 2018 Re-Inspection Report; **Exhibit L** pgs. 9-11, 119-21. It found no deficiency in security, admission/records/release, supervision of inmates, or classification. *See* **Exhibit B** pg. 3-4. TCI also confirmed that 41 different staff members employed at MCDF completed 40 or more hours of annual in-service training in 2017, which suggests institution-wide compliance with TCI training requirements at MCDF.[6] **Exhibit B** pg. 3.

### C. Cook and Jones were Temporarily Housed in Holding Cell One During Ongoing Booking

Jerrod Jones was brought into the MCDF at approximately 17:05 (5:05 PM) on February 17, 2018. **Exhibit E** attached to Defendant's Motion for Summary Judgment, Inmate Activity Reports pg 1. Mr. Cook was brought into the MCDF approximately 3 minutes later at 17:08 (5:08 PM). *Id.* The booking process with Mr. Jones started at approximately 17:22 (5:22 PM). **Exhibit G** attached to Defendant's Motion for Summary Judgment, Redacted History Arrest/Booking

[5] It is worth noting that this facility has maintained its TCI certification continuously since Sheriff Guy has been the Sheriff for McMinn County. *See* **Exhibit L** pg. 9.

[6] Officer Boo Hampton completed the 40-Hour TCI Corrections Officer Basic Course in 2017. **Exhibit N** pg. 8. Officer Derrick Saxe testified that corrections officers must do TCI certifications every year, and that he maintained his TCI certification continuously from 2014 through this incident. **Exhibit J** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Derrick Saxe pgs. 13, 18, 61. Officer Lana Green testified that she received adequate training to be a booking officer and that her supervisors provided her with adequate supervision. **Exhibit P** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Lana Green pg. 19. Jail Administrator Tobias Parsons testified that the jail maintained certification throughout his tenure and that TCI standards were reviewed and implemented annually with TCI training documented. **Exhibit K** pgs. 14-5 and 88-9. Further, Plaintiff Gavin Cook admitted that he had no reason to dispute that all McMinn County detention officers were TCI trained and that the jail was fully certified by TCI at the time of this incident. **Exhibit M** attached to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Gavin Cook pgs. 41-2.

Report for Jerrod Jones pgs. 1-3. Mr. Cook's booking process started at approximately 17:39 (5:39 PM). **<u>Exhibit F</u>** attached to Defendant's Motion for Summary Judgment, Redacted History Arrest/Booking Report pgs. 1-4.

Mr. Cook entered MCDF on a DUI charge. **<u>Exhibit F</u>**. Jones entered MCDF on misdemeanor theft of property under $1,000, shoplifting/theft of property, and criminal-trespass charges. *See* **<u>Exhibit G</u>**. The later aggravated assault and violation of probation charges in Mr. Jones's booking history arose from the Cook incident itself. **<u>Exhibit L</u>** pg. 5.

The parties agree that Cook and Jones were housed together in Holding Cell One during the booking process. *See* Amended Complaint [Doc. 12] ¶ 5; Defendant's Answer to Amended Complaint [Doc. 23] ¶ 5. The County has consistently maintained that both detainees remained in the booking process and had not yet received final housing assignments when Jones attacked Cook. *See* Amended Complaint [Doc. 12] ¶ 28; Defendant's Answer to Amended Complaint [Doc. 23] ¶ 28. Holding Cell One was used as a temporary booking-area holding cell while detainees were processed, not as a final general-population assignment. *See* **<u>Exhibit L</u>** pg. 47.

Jones's contemporaneous intake questionnaire asked whether his behavior suggested a risk of assault to anyone. **<u>Exhibit G</u>**. The answer was marked "No." **<u>Exhibit G</u>**; **<u>Exhibit N</u>** pg. 85. Officer Boo Hampton testified that the response reflected an intake observation that Jones was compliant and non-aggressive and rested on officer observation and demeanor during intake. **<u>Exhibit N</u>** pg. 85.

### D. The Pre-Incident Records Do Not Establish Contemporaneous Knowledge of an Immediate, Indiscriminate Risk to Cook; They Show Staff Intervention When Conflicts Occurred

The historical Jones records describe varied incidents arising in different settings. *See* Exhibit B to Amended Complaint [Doc. 12-2]. They also document MCDF staff responding by

separating inmates, removing Jones from a cell, relocating him, arranging medical care, or temporarily locking him down. *Id.* During the January 29, 2018 Booking Cell One incident involving Inmate David Rodriguez, jail staff immediately went to the cell, removed Jones, and called a nurse for Rodriguez. *Id.* at pgs. 5-6. Other reports record moves to another housing area, separation after a gym altercation, and lockdown in response to tensions in a housing unit. *Id.*

The record does not establish that every employee involved in the February 17, 2018 booking knew the details of these earlier incidents or viewed Jones as presenting an immediate threat of indiscriminate violence to Cook. Charles Dewayne Haney testified that he did not recall any pre-February 17, 2018 inmate-on-inmate assault involving Jones and was not aware of the January 29, 2018 fight with Inmate Rodriguez at the relevant time. **Exhibit O** to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Charles Dewayne Haney pgs. 32 and 43. He further testified that a person known to be aggressive and violent would be separated, but he saw nothing on February 17, 2018 that indicated that Jones and Cook should not be placed together in Holding Cell One. *Id.* at pgs. 31 and 37.

Officer Derrick Saxe testified that he knew only of one prior altercation involving Jones, did not consider Jones violent as of February 17, 2018, and did not perceive Jones's demeanor to signal violence. **Exhibit J** pgs. 40 and 115-16. In fact, Officer Saxe also testified that on February 17, 2018 he was also aware that Mr. Jones was trusted enough at MCDF at one time to have previously served as a trustee at the jail.[7] **Exhibit J** pg. 119-20. Lana Green testified that she was unfamiliar with Jones and did not know of any prior disciplinary reports involving Mr. Jones. **Exhibit P** pgs. 14-15.

[7] Trustees are interviewed for a particular job in MCDF after demonstrating a pattern of good institutional behavior. *Id.*

The disciplinary records of Jones after February 17, 2018 cannot establish pre-assault notice to the Defendant. The February 22, 2028 report identifies other inmates—not Jones—as offenders. Exhibit B to Amended Complaint [Doc. 12-2] pg. 14. The May 13, 2018 incident involving Mr. Jones occurred nearly three months after the incident at issue in this case. *Id.* at pg. 18.

### E. Jones's Sudden Assault Was Met with an Immediate Response and Emergency Aid

The parties agree that Jones attacked Mr. Cook without warning. *See* Amended Complaint [Doc. 12] ¶¶ 3, 5, 28, 29, 32 and 59; Defendant's Answer to Amended Complaint [Doc. 23] ¶¶ 3, 5, 28, 29, 32 and 59. Holding Cell One was in the booking area. Officer Haney testified that it was in direct line of sight from booking and that an altercation or fight could be heard. **Exhibit O** pgs. 37-8. Officer Lana Green described the sightline from the booking computer as "very easy to see." **Exhibit P** pg. 27. Sheriff Joe Guy noted that the booking area is the jail's most supervised area with officers posted at the booking counter and others milling about the area. **Exhibit L** pgs. 76 and 120.

Officer Green testified that Deputy Dale Murray announced a fight, Deputy Murray and Officer Saxe went straight to Cell One, and she followed to assist. *Id.* at pgs. 10-3. Her estimate was that the fight lasted only seven or eight seconds before staff recognized it and ran to assist. *Id.* at pg. 13. Deputy Dale Murray testified that he recognized a fight break out in Holding Cell One, told Officer Saxe about the fight, Officer Saxe grabbed the key and they both ran to Holding Cell One to assist immediately. **Exhibit I** to Defendant's Motion for Summary Judgment [Doc. 39], Deposition of Dale Murray pgs. 6-9. The surveillance video from the incident has been manually filed through a Notice of Manual Filing [Doc. 40], which captured the altercation between Jones and Mr. Cook in Holding Cell One on February 17, 2018. **Exhibit Q**, Booking Area Surveillance

Video. The officers arrived at the door of Holding Cell One within 12 seconds and had the door of Holding Cell One opened within 15 seconds of the incident beginning. *Id.*; **Exhibit J** pgs. 114 and 123.

Officer Saxe and Deputy Murray restrained Jones, began emergency aid for Mr. Cook, and summoned an ambulance. **Exhibit H** to Defendant's Motion for Summary Judgment [Doc. 39]. Plaintiff Gavin Cook testified that he has no criticism of officers' response after they became aware of the fight and acknowledged the resuscitation efforts and ambulance transport. **Exhibit M** pgs. 24-25.

## LEGAL STANDARD

Summary judgment is appropriate where the record demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party may satisfy its initial burden by demonstrating the absence of evidence supporting an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Once that showing is made, the burden shifts to the nonmovant to present specific facts, supported by admissible evidence, demonstrating a genuine issue for trial. *Id.*; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). As the Sixth Circuit recently reiterated, once the moving party identifies the absence of evidence supporting an essential element of the claim, the nonmovant must come forward with evidence from which a reasonable jury could find in his favor; allegations, labels, and speculation are insufficient. *See Franklin v. Franklin County,* 115 F.4th 461, 470 (6th Cir. 2024).

In evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Nevertheless, the nonmovant may not rely upon mere

allegations, conclusory allegations, speculation, or a scintilla of evidence to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Franklin*, 115 F.4th at 470. Rather, the nonmovant must come forward with evidence sufficient for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248.

A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Where the record as a whole could not lead a rational trier of fact to find for the nonmovant, summary judgment is required. *Matsushita*, 475 U.S. at 587. Indeed, one of Rule 56's primary purposes is to isolate and dispose of factually unsupported claims. *Celotex Corp.*, 477 U.S. at 323-24; *McConkey v. McGhan Medical Corp*., 144 F. Supp. 2d 958, 962 (E.D. Tenn. 2000). Where a plaintiff cannot produce evidence sufficient to establish an essential element on which he bears the burden of proof, summary judgment must be entered in favor of the defendant. *Celotex Corp.*, 477 U.S. 322-23; *Franklin*, 115 F.4th at 470.

## LAW AND ARGUMENT

### I. Governing Municipal-Liability Principles

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing 42 U.S.C. § 1983). "A body politic is a 'person' within the meaning of § 1983. But a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Franklin*, 115 F.4th at 470. Rather, a municipality may only be held liable under Section 1983 for its own illegal acts, meaning "a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas*, 398 F.3d at 429; *see also Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 843 (6th Cir. 2025) (stating that to prevail on a municipal liability claim, "the plaintiff must show

that an employee's unconstitutional conduct stems from a municipal 'policy or custom'" (quoting *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 599 (6th Cir. 2025)). Said differently, "[m]unicipalities and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation such that the government's deliberate conduct can be deemed the 'moving force' behind the violation." *H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1007 (S.D. Ohio 2015) (citing *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir.2013))

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas*, 398 F.3d at 429; *Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023).

Regardless of the route Plaintiff selects, he must identify the particular policy or custom, connect it to McMinn County, and show a direct causal link between the County conduct and Mr. Cook's asserted constitutional injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989). The policy or custom must be the moving force – not merely a factual background condition or an opportunity for a third party's independent act. *Amerson v. Waterford Twp.*, 562 Fed. App'x. 484, 490-91 (6th Cir. 2014).

Importantly, and "[r]egardless of the asserted theory…there can be no liability under *Monell* without an underlying constitutional violation." *Martinez*, 142 F.4th at 844 (citation modified); *see also Zimmermann v. Labish*, No. 25-1734, -- F.4th --, 2026 WL 2529819, at *8 (6th Cir. Aug. 27, 2026) ("*Monell* claims require a plaintiff to allege a constitutional violation by an individual government official and to connect the official's conduct to a municipal policy or custom.").

Although the Sixth Circuit has recognized a limited possibility that a municipality may, in certain circumstances, inflict constitutional harm through its own policies or practices even where no individual employee is found liable, such circumstances remain the exception rather than the rule. *See Grote v. Kenton County, Kentucky*, 85 F.4th 397, 414 (6th Cir. 2023); *Morgan by next friend Morgan v. Wayne Cnty., Michigan*, 33 F.4th 320, 329 (6th Cir. 2022) ("Because Morgan has not demonstrated that any individual employee violated her Eighth Amendment rights, she must show that the municipality itself, through its policy or practice, violated her Eighth Amendment rights by manifesting deliberate indifference to her vulnerabilities."). Even under that narrow theory, a plaintiff must still prove that the municipality itself acted with deliberate indifference and that a municipal policy or custom was the moving force behind the constitutional deprivation. *Id.* Plaintiff cannot satisfy that demanding standard here.

The Sixth Circuit's recent decision in *Franklin* further underscores the demanding nature of Plaintiff's burden. To establish a municipal custom through inaction, a plaintiff must identify a "clear and persistent pattern" of materially similar constitutional violations sufficient to place municipal policymakers on notice that corrective action is required. 115 F.4th at 472. Prior incidents do not satisfy this standard merely because they involve similar subject matter. Rather, the prior events must violate the same constitutional right and do so in a materially similar manner. *Id.* A handful of unrelated incidents, or incidents that result in corrective staff intervention, cannot establish the type of entrenched municipal custom required by *Monell*.

Plaintiff cannot satisfy that demanding standard here. The record contains no evidence of a clear and persistent pattern of inmate-on-inmate assaults arising from temporary booking-cell placements. Nor does Plaintiff identify a history of constitutional violations resulting from a purported "clean slate" practice or any comparable booking procedure. At most, Plaintiff points

to a limited number of disciplinary incidents involving Jones himself. Those incidents arose in different circumstances, involved different inmates, and, significantly, resulted in intervention from MCDF staff. Such evidence falls far short of establishing a County custom of deliberate indifference to inmate safety. Plaintiff cannot transform a sudden and tragic inmate-on-inmate assault into municipal liability absent proof that McMinn County itself adopted, maintained, or tolerated a constitutionally deficient policy or custom that directly caused Mr. Cook's alleged constitutional injury. The record contains no evidence from which a reasonable jury could reach that conclusion under any of Plaintiff's three distinct theories of *Monell* liability.

## II. Plaintiff Cannot Establish Municipal Liability on a Failure-to-Protect Theory

### A. The Record Does Not Show an Unconstitutional Official Policy or a Widespread, Affirmative Custom

MCDF's written policies required detainee screening, safety and security, visual checks, monitoring, incident reporting, supervisory notification, and corrective action. **Exhibits C and D**. Those policies are facially directed toward safety and response to incidents, not disregard of inmate safety. Plaintiff identifies no written policy requiring staff to house known dangerous detainees with vulnerable detainees or to ignore specific safety information.

Plaintiff instead relies on a "fresh start" or "clean slate" characterization. But Sheriff Guy denied that this was a policy or played a role in this incident, and Jail Administrator Parsons did not recall any written policy by either name. **Exhibit L** pg. 128; **Exhibit K** pgs. 63-64. Even accepting Plaintiff's characterization of Sheriff Guy's testimony, nothing in the record suggests that any alleged "fresh start" concept required officers to disregard known safety concerns or house inmates together despite a perceived danger. **Exhibit J** pg. 29-30; **Exhibit O** pg. 67. To the contrary, the undisputed testimony establishes that inmates known to be aggressive or violent would be separated in MCDF. **Exhibit J** pg. 86; **Exhibit L** pg. 48 and 66. Thus, the alleged "fresh

start" concept is not evidence of a policy directing officers to ignore substantial risks to inmate safety. More importantly, the record does not show that any general expectation that cooperative detainees be given an opportunity to behave required staff to ignore known, specific risks. Officer Haney testified that known aggressive or violent detainees would be separated. **Exhibit O** pg. 31.

An asserted unwritten custom must be shown with evidence, not extrapolated from this single placement decision or an expert's conclusion. *See Thomas*, 398 F.3d at 433-34. The absence of a formal classification system—or an assertedly imperfect classification practice—is not independently unconstitutional. The plaintiff must establish a causal link between the asserted classification deficiency and the injury. *Schoonover v. Rogers*, No. 21-3970, 2022 WL 12258998, at *8 (6th Cir. Oct. 21, 2022). The record here supplies no evidence that MCDF maintained an official direction to disregard known safety information or that any County-wide booking custom directly caused Cook's injury.

B. Plaintiff Cannot Prove a Custom of Tolerance or Acquiescence

An inaction theory requires proof of a clear and persistent pattern of unconstitutional conduct, County notice, tacit approval amounting to deliberate indifference, and a direct causal link to the plaintiff's injury. *See Thomas*, 398 F.3d at 429. The prior events must be materially similar in constitutional character; proof of a single event—or a collection of dissimilar events—does not establish the required policy of inaction. *See Franklin,* 115 F.4th at 472.

The disciplinary records for Jones do not show a County policy of tolerating constitutional violations. *See* Exhibit B to Amended Complaint [Doc. 12-2]. They show staff acting: moving Jones after conflict, separating inmates, removing him from Holding Cell One, obtaining medical care for another inmate, and temporarily locking him down when tensions escalated. *Id.* These

documented responses negate an inference that County policymakers tacitly approved inmate violence or refused to act when incidents were reported. *Id.*

Plaintiff's strongest reliance appears to be the January 29, 2018 altercation between Jones and inmate David Rodriguez. Even assuming that incident occurred precisely as the Plaintiff attempts to characterize it, the incident does not establish municipal liability under *Monell*. First, the incident concerns the conduct of a single inmate rather than a County policy, custom, or practice. Municipal liability cannot be established merely because a single inmate previously engaged in misconduct. Rather, Plaintiff must identify evidence that McMinn County itself maintained a policy, custom, or practice that caused the alleged constitutional violation. Second, the incident report itself reflects intervention rather than acquiescence. Exhibit B to Amended Complaint [Doc. 12-2] pgs. 5-6. According to the reports, detention staff responded to the altercation, removed Jones from the cell, separated the inmates, and arranged medical attention for Rodriguez. Such corrective measures are fundamentally inconsistent with a municipal custom of tolerating inmate violence or ignoring known risks. Third, even assuming the Rodriguez incident constituted a constitutional violation, a single prior altercation involving one inmate cannot establish the "clear and persistent pattern" of materially similar constitutional violations required by *Franklin*. Plaintiff identifies no recurring pattern of inmate-on-inmate assaults arising from temporary booking-cell placements, no repeated constitutional violations involving Holding Cell One, and no evidence that County policymakers were repeatedly confronted with substantially similar incidents. Nor is there evidence that the officers involved in Mr. Jones's February 17, 2018 intake were contemporaneously aware of the underlying details of the Rodriguez incident when the temporary booking-cell placement decision was made. At most, the incident with Rodriguez suggests that Jones had previously been involved in an inmate dispute. It does not establish an

unconstitutional County custom, deliberate indifference by County policymakers, or a policy that was the moving force behind Mr. Cook's death.

Even accepting Plaintiff's characterization of the Rodriguez incident, the event does not establish that Jones posed a substantial risk of indiscriminate violence to all future detainees. The disciplinary records identified by Plaintiff reflect isolated inmate disputes arising under differing circumstances rather than a pattern of unprovoked attacks against strangers. Nothing in the record suggests Jones threatened Mr. Cook, targeted intoxicated detainees, targeted newly booked inmates, or was known to attack inmates simply because they happened to be housed nearby. At most, the Rodriguez incident demonstrated that Jones had previously been involved in a jail altercation. Under *Farmer*, *Poynter*, and *Franklin*, that is insufficient to establish actual awareness of a substantial risk to Mr. Cook or a County policy of deliberate indifference.

Indeed, the record demonstrates the opposite. The pre-February 17, 2018 incident reports involving Jerrod Jones consistently document staff intervention, inmate separation, housing changes, medical referrals, or temporary lockdown measures. *See* Exhibit B to Amended Complaint [Doc. 12-2]. Those actions are fundamentally inconsistent with the notion that McMinn County tacitly approved inmate violence or turned a blind eye to known constitutional violations. *See Thomas*, 398 F.3d at 429-30. The undisputed evidence therefore undermines, rather than supports, Plaintiff's assertion that County policymakers maintained an unofficial custom of tolerance or acquiescence.

Nor has Plaintiff identified a clear and persistent pattern of materially similar constitutional violations arising from the same alleged temporary-booking practice. *Franklin* rejects municipal liability where the cited incidents are insufficiently similar to establish a clear and persistent pattern or do not show that the municipality's alleged inaction was the moving force. *See Franklin,* 115

F.4th at 472. The County does not minimize the January 29, 2018 incident with Rodriguez. An officer reported seeing Jones punch David Rodriguez in Holding Cell One, the same cell involved here. Staff intervened, removed Jones, and called a nurse for Rodriguez. The disputed question is what the incident established about a substantial risk at Jones's later booking, what the personnel responsible for the February 17, 2018 placement actually knew, and whether a County policy or custom – rather than an individual placement decision caused Mr. Cook's injury. Plaintiff cannot establish that the personnel involved in Jones's February 17 intake actually knew the underlying details or that Jones posed an immediate, indiscriminate risk to Cook. Officers Haney, Saxe, and Green all testified to limited or no contemporaneous knowledge of Jones's earlier disciplinary history. *See* supra Statement of Facts § D.

Post-assault events add nothing to notice or causation. Events that occurred after Cook was placed with Jones could not have informed the County's or any booking officer's decision beforehand. The February 22, 2018 report does not identify Jones as an offender, and the May 13, 2018 event involving Jones occurred months after Mr. Cook's assault after Jones had been charged with Mr. Cook's death. *See* supra Statement of Facts § D.

C. <u>Plaintiff Cannot Establish an Underlying Failure-to-Protect Violation</u>

Plaintiff's failure-to-protect theory fails at the threshold because the Sixth Circuit recently clarified the governing constitutional standard in *Poynter by & through Fernandez v. Shirley* No. 25-5188, -- F.4th --, 2026 WL 2641092, at *16 (6th Cir. Sept. 8, 2026). For several years, courts within the Sixth Circuit applied differing standards to failure-to-protect claims asserted by pretrial detainees. In *Poynter*, however, the en banc court confirmed that the subjective deliberate indifference framework announced in *Farmer* governs all conditions of confinement claims, including claims arising from inmate-on-inmate violence. Under that standard, a plaintiff must

establish both that he was exposed to a substantial risk of serious harm and that the defendant official was subjectively award of that risk and consciously disregarded it. *Poynter*, 2026 WL 2641092, at *6. Actual awareness remains the touchstone of constitutional liability. An official's failure to perceive a risk he should have perceived may amount to negligence, but negligence is insufficient to establish a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

It is anticipated that Plaintiff will attempt to rely heavily upon hindsight in arguing that Jones's disciplinary history should have resulted in different classification decisions or additional scrutiny before he was placed in Holding Cell One. But *Poynter* makes clear that constitutional liability cannot be imposed merely because a corrections officer could have perceived a danger or because a different housing decision, like segregated housing for all incoming inmates, might have prevented an assault. *Poynter*, 2026 WL 2641092, at *6. The relevant question is whether the officers involved in Jones's intake actually perceived a substantial risk that Jones would attack Cook and nevertheless disregarded that risk. *See id.* The undisputed record contains no such evidence.

Indeed, the evidence points in the opposite direction. Although Plaintiff now relies heavily upon Jones's prior disciplinary history, the relevant constitutional question under *Farmer* and *Poynter* is not what information can be assembled with the benefit of hindsight, but what the involved officers actually knew and perceived on February 17, 2018. The undisputed record demonstrates that Jones appeared compliant and non-aggressive during intake, that his contemporaneous intake assessment reflected no observed behavior suggesting a risk of assault, and that the officers involved did not perceive Jones to present an immediate threat to Cook or other detainees. Officer Haney testified that he was unaware of the January 29, 2018 incident

between Jones and Rodriguez at the time of booking Jones on February 17, 2018 and did not believe Jones should be separated from Mr. Cook. **Exhibit O** pgs. 33, 43 and 61. Likewise, Office Saxe testified that he did not consider Jones violent and that nothing about Jones's demeanor suggested an imminent risk of violence. **Exhibit J**, pgs. 115, 127. Officer Green similarly testified that she was unfamiliar with Jones and had no knowledge of prior disciplinary reports involving him. **Exhibit P** pgs. 14-15. Under *Farmer* and *Poynter*, Plaintiff must prove actual awareness and conscious disregard of a substantial risk. The record instead demonstrates the absence of such awareness.

This case is unlike the circumstances in which the Sixth Circuit has found sufficient proof of a known, particularized risk. In *Schoonover*, the alleged assailant had recently attacked an inmate because of that inmate's sex-offender status, and the plaintiff offered evidence that the jail recognized sex offenders as uniquely vulnerable. *Schoonover*, 2022 WL 12258998, at *2. Yet the court still affirmed summary judgment because the plaintiff could not show that the officer knew the assailant posed a particular threat to sex offenders. Id. at *11. The record here is weaker still: Cook was not identified as a member of any particular vulnerable group, Jones was not known to target persons like Cook, and the involved staff did not subjectively understand Jones to pose a specific danger to Cook.

Federal Courts have repeatedly rejected failure-to-protect claims premised solely upon an inmate's prior history of violence. In *Moore v. Guastella*, prison officials were alleged to have failed to protect an inmate from assault by another inmate with a documented history of mental illness and prior violent behavior. No. 2:23-CV-10974, 2024 WL 5506982, at *1 (E.D. Mich. Sept. 19, 2024), *report and recommendation adopted*, No. 23-10974, 2025 WL 854902 (E.D. Mich. Mar. 19, 2025). The district court rejected this claim, finding the plaintiff had failed to show there was

a "substantial probability that [the assailant] would attack other prisoners if allowed to intermingle with the general population without restraint[,]" that the plaintiff belonged to a group the assailant was predisposed to target, or that—notwithstanding the fact the assailant had previously attack another inmate—the assailant "had a propensity for indiscriminate violence." *See id.* at *5–6. In other words, the plaintiff failed to show he was the victim of anything other than a random attack, and the failure to prevent such an attack did not amount to deliberate indifference. *See id.* at *7. Additionally, the court noted that one of the prison officials could not be held to be deliberately indifferent because they attempted to help the plaintiff within seconds of the attack starting *See id.*

The same reasoning applies here. Plaintiff has identified no evidence that Jerrod Jones threatened Mr. Cook, no evidence of a prior relationship between the two men, no evidence that Mr. Cook belonged to a class of inmates Jones was known to target, and no evidence that the booking officers subjectively believed Jones presented an immediate danger to Cook. At most, Plaintiff relies upon hindsight and isolated disciplinary reports to argue that officers should have appreciated a greater risk. *Farmer*, however, requires proof that officials actually perceived and consciously disregarded a substantial risk, not merely that they could have reached a different conclusion in retrospect. 511 U.S. at 846.

Nor does the January 29, 2018 incident with Rodriguez alter this conclusion. Even if that incident demonstrated that Jones had previously been involved in a physical altercation with another inmate, Plaintiff has produced no evidence that Jones threatened Mr. Cook, targeted inmates like Mr. Cook, or was known to engage in random attacks against detainees generally. The constitutional question under *Farmer* and *Poynter* is not whether officers could have perceived some abstract possibility of harm from Jones's prior disciplinary history. The question is whether the involved officers actually perceived a substantial risk that Jones would attack Mr. Cook and

consciously disregarded that risk. Plaintiff has identified no evidence from which a reasonable jury could make that finding.

Most importantly, the record depicts a sudden and essentially random assault rather than a known and particularized danger. There is no evidence that Jones threatened Cook before the attack. There is no evidence that Cook and Jones had any prior conflict or relationship for that matter. There is no evidence that Cook belonged to a class of inmates Jones was known to target. And there is no evidence that any officer involved in the February 17, 2018 booking process believed Jones posed an imminent risk to Cook or to any inmate with whom he might temporarily be housed. At most, Plaintiff argues that Jones's prior disciplinary history should have caused officers to view him as presenting a greater risk. But the Constitution does not impose liability because an assault might have been foreseeable in the abstract. Under *Farmer* and *Poynter*, liability arises only when officials actually recognize and consciously disregard a substantial risk of harm. The undisputed record before this Court shows no such awareness here. What occurred was a tragic and unforeseeable assault, not the realization of a known and ignored danger.

Plaintiff's theory depends largely on combining information from multiple prior incidents and then arguing that the resulting composite picture should have alerted jail personnel to a risk. But *Farmer* does not ask whether lawyers or experts, reviewing records years later, can identify warning signs. The question is whether the officials involved actually perceived a substantial risk at the time of the event. The testimony of Officers Haney, Saxe, and Green is uniform on that point. None believed Jones posed an imminent danger to Cook, and none of them understood the prior incidents to establish that Jones was likely to commit a sudden and fatal assault on Mr. Cook on February 17, 2018. Accordingly, Plaintiff's evidence amounts to a hindsight negligence argument, not proof of deliberate indifference.

*Farmer* does not impose liability whenever a jail could, with hindsight, have reduced the possibility of an assault. It requires actual awareness of facts from which an official drew the inference of a substantial risk, and negligence or a failure to perceive a risk that should have been perceived does not suffice. *Farmer*, 511 U.S. at 837-38. And even an absence of a formal classification system is not a constitutional violation without a causal connection to the plaintiff's harm. *Schoonover*, 2022 WL 12258998, at *8. Plaintiff has not supplied evidence to bridge these gaps.

Moreover, *Poynter* emphasizes that the Constitution does not guarantee perfect jail management or freedom from all inmate violence. Rather, it prohibits the conscious disregard of known substantial risks. *Poynter,* 2026 WL 2641092, at *16. The record here reflects neither. Instead, the evidence demonstrates a sudden unexpected assault that officers did not anticipate and immediately responded to once detected.

The response also was reasonable once the assault was recognized. Staff reached the door in approximately 12 seconds, entered the cell in approximately 15 seconds, restrained Jones, began CPR, and summoned EMS. Plaintiff has no criticism of the officers' post-detection response. *See* supra Statement of Facts § E. Officials who respond reasonably to a known risk are not liable merely because harm ultimately occurs. *Farmer v. Brennan*, 511 U.S. at 844; *see also Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 686 (6th Cir. 2024) (failure-to-protect theory requires concrete facts showing both notice of the asserted risk and failure to respond reasonably). Absent proof of an underlying constitutional violation, Plaintiff's *Monell* claim fails.

## III. Plaintiff Cannot Establish Municipal Liability on a Failure-to-Train Theory

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

> In order to show that a municipality is liable for a failure to train its employees, a plaintiff "must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury."

*Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)).

Plaintiff offers no evidence of a County decision to withhold training or supervision despite notice of recurring, comparable constitutional violations. The Supreme Court has emphasized that a failure-to-train claim ordinarily depends on a pattern of similar constitutional violations; the single-incident path is confined to a narrow range of recurring situations in which the need for specific training is obvious and the constitutional injury highly predictable. *Connick*, 563 U.S. at 64. *Canton* makes the causation point especially clear: the fact that a particular injury might have been avoided with better or more training does not establish that the County's training program was constitutionally deficient or that any deficiency actually caused the injury. *Canton*, 489 U.S. at 391. Neither the pattern nor the narrow single-incident showing exists here.

Recent Sixth Circuit authority further illustrates why Plaintiff's theory fails. In *Martinez*, the court reiterated that deliberate indifference in the failure-to-train context requires proof that municipal policymakers were on actual or constructive notice that existing training was deficient and likely to result in constitutional violations. 142 F.4th at 844. A municipality is not deliberately indifferent merely because additional training might conceivably have reduced the possibility of future injury. *See Kiner v. City of Memphis*, No. 23-CV-02805, 2025 WL 1841252, at *9 (W.D. Tenn. Feb. 12, 2025).

Plaintiff offers no evidence that McMinn County policymakers received complaints, reports, audits, or warning demonstrating that existing training regarding inmate classification or

temporary booking-cell placement was producing constitutional violations. Likewise, Plaintiff identifies no pattern of inmate-on-inmate assaults attributable to deficiencies in training. Absent such notice, Plaintiff cannot establish deliberate indifference as a matter of law.

The record affirmatively shows TCI-aligned training, rather than an absence of training. TCI reported that 41 MCDF staff members completed 40 or more hours of annual in-service training in 2017. **Exhibit B** pg. 3. Hampton's training materials document completion of a 40-hour TCI Corrections Officer Basic Course in 2017. **Exhibit N** pg. 8. Officer Derrick Saxe testified that corrections officers must do TCI certifications every year, and that he maintained his TCI certification continuously from 2014 through this incident. **Exhibit J** pgs. 13, 18, 61. Officer Lana Green testified that she received adequate training to be a booking officer and that her supervisors provided her with adequate supervision. **Exhibit P** pg. 19. Jail Administrator Tobias Parsons testified that MCDF maintained certification throughout his tenure and that TCI standards were reviewed and implemented annually with TCI training documented. **Exhibit K** pgs. 14-5 and 88-9.

This is not a record of untrained staff confronting a recurring situation without tools to address it. The record instead shows formal booking and incident-response policies, substantial annual training, and immediate implementation of emergency-response procedures once the assault was detected. TCI found no deficiency in classification at the relevant 2018 inspection and later found no deficiency in supervision or classification after re-inspection. *See* supra Statement of Facts § B.

The record also does not support causation. The asserted omission is a failure to review and synthesize Jones's full institutional history at the booking counter. But Plaintiff identifies no MCDF policy or TCI standard that imposed that asserted obligation as a prerequisite to temporary

booking-area placement. Nor does the record establish what information, if any, the Eagle system used at MCDF could have flagged or presented to booking personnel.

This case closely resembles *Morgan by next friend Morgan*, 33 F.4th at 329, where the Sixth Circuit rejected a municipal liability claim because the plaintiff failed to identify prior substantially similar incidents sufficient to place policymakers on notice of an alleged deficiency. The Court explained that absent evidence of prior constitutional violations, a county cannot be said to have consciously disregarded an obvious need for additional training. *Id.*

The same defect is present here. Plaintiff seeks to infer deliberate indifference from a single tragic event. But neither *Monell*, *Connick* nor *Morgan* permits a jury to infer municipal fault solely because an injury occurred. Plaintiff must instead demonstrate that County policymakers knew existing training was producing constitutional violations and nevertheless chose to do nothing. The record before this Court contains no such evidence.

A claim that better or additional training might have avoided a particular injury does not establish municipal liability. *Amerson*, 562 Fed. App'x. at 491. The Constitution does not transform hindsight criticism into deliberate indifference or make the County an insurer against an inmate's sudden assault.

## IV. Plaintiff Cannot Establish Municipal Liability on a Failure-to-Supervise Theory

A failure-to-supervise claim requires the same rigorous proof of deliberate indifference and moving-force causation. *Id.* To prevail on such a claim, a plaintiff must show: "(1) the defendant government was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation." *Davis v. Chorak*, 624 F. Supp. 3d 870, 883 (W.D.

Mich. 2022) (citation modified), *aff'd*, No. 22-1839, 2023 WL 2487339 (6th Cir. Mar. 14, 2023); *see also Amerson*, 562 F. App'x at 492 (stating that to prevail on a failure-to-supervise claim, the plaintiff "must show that the [municipality] acted with deliberate indifference to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the [violation]" (citation modified)).

MCDF had written booking, monitoring, incident-reporting, supervisory-notification, and corrective-action procedures. **Exhibits C and D**. TCI's initial supervision finding concerned one-hour security checks, not the booking area, Holding Cell One, classification, or active-assault response. **Exhibit A**. The re-inspection found no supervision-of-inmates deficiency. **Exhibit B**. And Mr. Jones's prior disciplinary reports show staff responding to conflicts with separation, relocation, medical referral, and temporary lockdown. *See* Exhibit B to Amended Complaint [Doc. 12-2].

Plaintiff therefore cannot show a deliberate County choice to leave known staff misconduct uncorrected. Nor can Plaintiff establish a standalone failure-to-supervise claim. Although supervisory liability claims are less frequently litigated than failure-to-train claims, they require essentially the same proof of notice, deliberate indifference, and causation. *See Amerson*, 562 F. App'x at 492; *Davis*, 624 F. Supp. 3d at 880. Plaintiff must show that County policymakers knew, or should have known, that detention personnel were committing or were likely to commit constitutional violations and nevertheless chose not to act.

The same absence of notice that defeats Plaintiff's failure-to-train claim defeats his supervision claim as well. Plaintiff identifies no pattern of constitutional violations by MCDF employees, no recurring incidents demonstrating that detention officers routinely disregarded inmate safety, and no evidence that County officials ignored known employee misconduct. To the

contrary, the record demonstrates written policies, annual training, inmate monitoring procedures, incident reporting requirements, supervisory notification mandates, and documented intervention when inmate disputes occurred. Those actions are fundamentally inconsistent with deliberate indifference.

Because Plaintiff cannot establish notice, deliberate indifference, or moving-force causation, no reasonable jury could impose municipal liability under a failure-to-supervise theory. Summary judgment should therefore be entered in favor of McMinn County on this theory as a matter of law.

## V. Plaintiff Cannot Establish the Required Moving Force Causation or Ratification

### A. <u>The Video Record Establishes a Rapid Response and Does Not Support a Moving Force Theory</u>

The County has tendered the booking-area video as **<u>Exhibit Q</u>**. The video is the best evidence of the sequence of events, the abrupt nature of the assault, and the timing of the staff response. It should be viewed directly rather than filtered through competing expert characterizations.

Based on the timing analysis of the recording, staff reached the Holding Cell One door approximately 12 seconds after the altercation began and entered the cell approximately 15 seconds after it began. This timing is consistent with Officer Green's testimony that the fight lasted only seven or eight seconds before staff recognized it and immediately went to assist. **<u>Exhibit P</u>** pg. 13.

The surveillance video therefore defeats an inference that a County policy or custom delayed the response once staff recognized an altercation. Staff reached the cell, opened the door, restrained Jones, administered emergency aid, and requested an ambulance. The record does not

permit a reasonable jury to find that any asserted policy, training deficiency, or alleged lighting practice was the moving force behind the rapid assault or the County's response to it.

B. The Absence of Employee Discipline Does Not Establish Ratification or Municipal Liability

The County admitted that no correctional officer was disciplined in connection with the February 17 assault but denied that there was reason to discipline staff or that any County policy, practice, or custom was the moving force behind Cook's death. *See* Amended Complaint [Doc. 12] ¶ 8; Defendant's Answer to Amended Complaint [Doc. 23] ¶ 8. The lack of discipline after a single event, without proof of an underlying constitutional violation, prior similar constitutional violations, deliberate indifference, or causation, cannot establish a county-wide policy of ratification. To hold otherwise would collapse *Monell*'s policy-or-custom requirement into prohibited respondeat superior liability.

## CONCLUSION

The record shows a sudden assault during ongoing intake, not a County policy or custom that was the moving force behind a constitutional violation. MCDF's written policies addressed safety, screening, monitoring, incident reporting, supervisory notification, and remedial action. The pre-incident reports on Jones document interventions rather than tolerance by McMinn County. The evidence does not establish that the relevant staff knew Jones posed a substantial, immediate risk to Mr. Cook. And the hand-filed booking-area video, together with the percipient testimony shows that the staff reached the cell door of Holding Cell One in approximately 12 seconds, entered Holding Cell One in approximately 15 seconds, retrained Jones, began CPR and summoned EMS. Because Plaintiff cannot prove an underlying constitutional violation, an unconstitutional County policy or custom, deliberate indifference, or the required direct causal

link, McMinn County respectfully requests that the Court grant its Motion for Summary Judgment [Doc. 39] and dismiss Plaintiff's claims with prejudice.

RESPECTFULLY SUBMITTED this 25th day of September, 2026.

McMINN COUNTY, TENNESSEE

By: */s/ Jonathan Swann Taylor*
Jonathan Swann Taylor (TN BPR #025094)
Kramer Rayson LLP
800 S. Gay Street, Suite 2500
P.O. Box 629
Knoxville, TN 37901-0629
Telephone: (865) 525-5134
Facsimile: (865) 522-5723
Email: jstaylor@kramer-rayson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Jonathan Swann Taylor*
Jonathan Swann Taylor